UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF AN APPLICATION ) <br> OF THE UNITED STATES OF AMERICA ) <br> FOR A WARRANT TO OBTAIN ) <br> LOCATION INFORMATION, INCLUDING ) <br> PRECISION LOCATION INFORMATION; ) <br> SUBSCRIBER AND TRANSACTIONAL ) <br> RECORDS; CELL SITE INFORMATION; ) <br> AND FOR A PEN REGISTER AND TRAP ) <br> AND TRACE DEVICES FOR PHONE ) <br> NUMBER ███████████ ) | Case No. 4:24 MJ 7303 SPM <br><br> *Signed and Submitted to the Court for* <br> *filing by reliable electronic means* <br><br> **FILED UNDER SEAL** |

**APPLICATION BY ATTORNEY FOR THE UNITED STATES**

COMES NOW the United States of America, by and through its attorneys, the United States Attorney for the Eastern District of Missouri, and Dane A. Rennier, Assistant United States Attorney for said District, and hereby makes application to this Court for a warrant and order, pursuant to Title 18, United States Code, Sections 2703(c)(1)(A) & B, (c)(2), 3123 and Federal Rule of Criminal Procedure 41, authorizing agents/officers of the Drug Enforcement Administration (hereinafter referred to as the "investigative agency(ies)"), and other authorized federal/state/local law enforcement agencies, to obtain records and location information, including precision location information, cell site location information, and other signaling information, associated with the cellular telephone ███████████, identified in Attachment A to the requested Warrant and Order (hereinafter the "subject cellular telephone").

**INTRODUCTION AND RELIEF REQUESTED**

1.      The present application requests relief in three forms.  First, the application requests the disclosure of information about the location of the subject cellular telephone described in Attachment A to the requested Warrant and Order, including GPS or E-911 information.  Second, the application requests transactional and subscriber records and cell site information, which does not include precision location information, associated with the subject cellular telephone.  Third,

1

the application requests authorization for the installation and use of pen register and trap and trace devices. In making this application, the United States does not seek the contents of any communication.

2. The subject cellular telephone is serviced by **T-Mobile** (hereinafter referred to as "the Provider"). The records and information requested herein may include information related to when the subject cellular telephone is located in a protected space, such as a residence.

3. The Provider is an electronic communications service provider within the meaning of Title 18, United States Code, Section 2510(15), and as such, is subject to Title 18, United States Code, Section 2703(c)(1)(A).

4. Based on the facts as set forth in the attached affidavit, there is probable cause to believe that the subject cellular telephone is currently being used in connection with violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 committed by ███████████ and others known and unknown.

5. The United States makes this application upon a showing of probable cause. Incorporated by reference as if fully set out herein is the affidavit of James Gaddy Task Force Officer Drug Enforcement Administration which alleges facts in order to show that there is probable cause to believe that evidence of the commission of the above-described subject offenses can be obtained by locating and monitoring the location of the subject cellular telephone, without geographic limitation within the United States, including by obtaining precision location information (*e.g.*, GPS and E-911 information), subscriber and transactional data, cell site information, and signaling information from pen register and trap and trace devices concerning the subject cellular telephone, as described in Attachment B to the requested Warrant and Order.

6. The applicant and undersigned Assistant United States Attorney is an "attorney for the United States" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

**JURISDICTION**

7.      This Court has jurisdiction to issue the requested Warrant and Order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PRECISION LOCATION INFORMATION REQUEST**

8.      The United States requests a warrant directing the Provider, and/or any service provider(s) reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide all information about the location of the subject cellular telephone, as described in Part I of Attachment B to the requested Warrant and Order, during all times of day and night.

9.      "Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the subject cellular telephone described in Attachment A to the requested Warrant and Order.

**TRANSACTION RECORDS AND CELL SITE LOCATION
INFORMATION REQUEST**

10.      The United States further requests a warrant directing the Provider, and/or any service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to provide certain telecommunication records and information, including transactional

3

and subscriber data and cell site location information, but not the contents of any communication, as described in Part II of Attachment B to the requested Warrant and Order.

11. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the Affidavit attached to this application and incorporated herein, sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment B to the requested Warrant and Order are relevant and material to an ongoing criminal investigation.

### PEN REGISTER, TRAP AND TRACE REQUEST

12. This is an application made, in part, under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of pen register and trap and trace devices on the Provider and any other applicable service providers reflected in Attachment A to the requested Warrant and Order.

13. Such an application must include three elements: (1) "the identity of the attorney for the United States or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b). These elements have been established previously in this Application.

14. A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a

4

device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

15.     In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications, as described below.

16.     A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications.  Individuals using cell phones contract with cellular service providers, who maintain antenna towers covering specific geographic areas.  In order to transmit or receive calls and data, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

17.     In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cell phone could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI").  When a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers—as transmitted from a cell phone to a cellular antenna or tower—are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the

5

communication's content.  In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data).  These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

18.    A cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents. Cellular phones can connect to the Internet via the cellular network.  When connecting through the cellular network, Internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.  These telephone numbers can include "post-cut-through dialed digits," which are numbers dialed from the cell phone after the initial call set up is completed.  For example, some post-cut-through dialed digits may be the actual telephone number called, such as when a subject places a calling card, credit card, or collect call by first dialing a long-distance carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party.  That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made.  In the event that the pen-trap devices capture some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the United States' use of reasonably

6

available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

19.     As previously outlined, the United States certifies that the information likely to be obtained through the aforesaid pen register and trap and trace devices, including enhanced caller identification, is relevant to an ongoing criminal investigation.

20.     For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices as defined in Title 18, United States Code, Section 3127, without geographic limitation within the United States, to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the subject cellular telephone described in Attachment A, to include the date, time, and duration of the communication, as described in Part III of Attachment B.  The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

21.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order the Provider, and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with a minimum of disruption to normal service.

22.     The United States further requests that the Court order the Provider and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the investigative agency(ies) of any changes relating to the cell phone number described in Attachment A to the requested Warrant and Order, and to provide prior notice to the applicant and the investigative agency(ies) before terminating or changing service to the phone number.

23.    The United States further requests that the Court order that the investigative agency(ies) and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, and at reasonable intervals and at such other times as may be acceptable to them, for the duration of the Warrant and Order.

24.    The United States further requests that the Court order that should the telephone and/or ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI number listed in Attachment A to the requested Warrant and Order be changed by the subscriber during the effective period of any Order granted as a result of this application, that the Court order the request for pen register and trap and trace devices remain in effect for any new telephone to which the subject cellular telephone listed above is changed, throughout the effective period of such Order.

25.    The United States further requests that the Provider and/or any entity providing such assistance shall be reasonably compensated by the investigative agency(ies) pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

## MISCELLANEOUS CONSIDERATIONS

26.    Pursuant to Title 18, United States Code, Section 2703(c)(3), the United States entity or agency receiving these records or information as a result of this application and accompanying warrant and order will not provide notice to the subscriber or customer of the subject cellular telephone.

27.    Title 18, United States Code, Section 2703(g) provides that an officer is not required to be present for the service or execution of a warrant issued under Section 2703. The information requested herein does not require a physical intrusion or physical trespass into any protected space. Accordingly, it is respectively requested that the warrant authorize the

8

investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain the information described herein at any time, day or night.

28.    The United States further requests that the Order direct that the investigative agency(ies) provide the telecommunication providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, just compensation for reasonable expenses incurred in providing such information, facilities and technical assistance.

29.    Based on the forgoing, I request that the Court issue the requested search warrant. The United States will execute this warrant by serving the warrant on telecommunication providers reflected in Attachment A to the requested Warrant and Order.  Because the warrant will be served on telecommunication providers reflected in Attachment A to the requested Warrant and Order, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

30.    In light of the ongoing nature of the investigation as reflected in the attached affidavit, and because disclosure at this time would seriously jeopardize the investigation, including by giving the subject(s) an opportunity to destroy and/or tamper with evidence and flee, applicant requests that the application, affidavit and warrant be sealed.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit, which is attached hereto and incorporated herein, the applicant requests that this Court issue a Warrant authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the subject cellular telephone.

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

Dated this __2nd__ day of December, 2024.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

_/s/Dane A. Rennier_____
DANE A. RENNIER#67299MO
Assistant United States Attorney

10

AO 106 (Rev. 06/09)   Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of                )<br>Precision Location Information; Subscriber & )<br>Transactional Records; Cell Site Information; Pen )<br>Register & Trap-and-Trace for Phone ▮▮▮▮▮▮ ) | Case No. 4:24 MJ 7303 SPM<br>*Signed and Submitted to the Court for*<br>*filing by reliable electronic means*<br>**FILED UNDER SEAL**. |

## APPLICATION FOR A SEARCH WARRANT

I,      James Gaddy      , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

### See Attachment A

located in the _____ District of _____ New Jersey _____ , there is now concealed

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ✓ evidence of a crime;
- ✓ contraband, fruits of crime, or other items illegally possessed;
- ✓ property designed for use, intended for use, or used in committing a crime;
- ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, USC Section 841 and 846 | possession with the intent to distribute controlled substances and conspiracy |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

- ✓    Continued on the attached sheet.
- ❑    Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under penalty of perjury that the forgoing is true and correct

_____
*Applicant's signature*
James Gaddy, Task Force Officer, DEA

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedures 4.1 and 41.

Date:      December 2, 2024      

_____
*Judge's signature*

City and State:      St. Louis, MO      

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*
AUSA:   Dane A. Rennier

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION  )
OF THE UNITED STATES OF AMERICA  )
FOR A WARRANT TO OBTAIN    )  Case No. 4:24 MJ 7303 SPM
LOCATION INFORMATION, INCLUDING )
PRECISION LOCATION INFORMATION; )  *Signed and Submitted to the Court for*
SUBSCRIBER AND TRANSACTIONAL  )  *filing by reliable electronic means*
RECORDS; CELL SITE INFORMATION;  )
AND FOR A PEN REGISTER AND TRAP  )  **FILED UNDER SEAL**
AND TRACE DEVICES FOR PHONE   )
NUMBER ███████████     )

### AFFIDAVIT

I, James Gaddy, being first duly sworn by reliable electronic means, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant and order pursuant to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with a cellular telephone number ███████████ (hereinafter referred to as the "**subject cellular telephone**") to require **T-Mobile** (hereinafter "the Provider"), and/or any service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to disclose to the United States location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the **subject cellular telephone**, as described in Attachment B to the requested warrant and order.

2. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been since 2010.  I have been a deputized DEA TFO since January 2010 and am currently assigned to an Enforcement Group of the St. Louis Division Office.  Prior to my DEA assignment,

1

I was a sworn police officer with the St. Charles County Police Department and Breckenridge Hills Police Department for approximately 27 years.  During the course of my law enforcement experience, I have participated in numerous investigations involving controlled substances.  I have conducted investigations of a variety of illegal drug-trafficking and money-laundering organizations.  I have participated in investigations that led to the seizure of illegal drugs, weapons, and assets derived from the sale of illegal drugs, and the subsequent felony arrests of those individuals involved.  I have participated in numerous drug-related training courses throughout my law enforcement career.  I am familiar with and have used normal methods of investigation, including, but not limited to, visual and electronic surveillance, questioning of witnesses and defendants, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire and electronic intercepts.

3.      The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses.  As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

4.      The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 (hereinafter referred to as "the subject offenses"), by ████████████ (**hereinafter:** ███████), and others known and unknown.  There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

## BACKGROUND CONCERNING WIRELESS PROVIDERS

6.      Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.      Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

b.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.  For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.  Wireless providers maintain information, including the corresponding cell

3

towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

c.    Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

d.    Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

e.    Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length

4

of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

f.      Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

g.      In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein

5

incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## INVESTIGATION AND PROBABLE CAUSE

### i. Background of Investigation

7. The United States, including the DEA, is conducting a criminal investigation of ▮▮▮▮▮▮▮▮▮▮▮▮ and others known and unknown regarding the commission of the subject offenses.

8. During the course of this investigation, DEA has obtained evidence of the drug conspiracy through confidential source #1 (CS-1), surveillance, the seizure of drugs, controlled drug purchases, recorded telephone communications, toll analysis, debriefings and intelligence gathered from CS-1.[1]

9. In mid-November 2024, DEA St. Louis Division, Strike Force Group 37 (DEA SLDO SF-37) learned of a substantial St. Louis-based fentanyl and methamphetamine distributor, identified as ▮▮▮▮.[2] According to CS-1, ▮▮▮▮ acquires substantial amounts of fentanyl and methamphetamine and redistributes the fentanyl and methamphetamine from within ▮▮▮' St. Louis area ▮▮▮ called ▮▮▮▮▮▮ located at ▮▮▮▮▮▮, in St. Louis County, Missouri, which is within the Eastern District of Missouri. CS-1 provided Missouri-

---

[1] During the initial commencement of this investigation, members of the investigative team utilized information and assistance from a St. Louis Metropolitan Police Department (SLMPD) confidential source, CS-1. CS-1 has been cooperating with SLMPD since ▮▮▮▮ CS-1's cooperation has led to arrests and drug seizures. CS-1 has no prior felony convictions for drugs and is offering his/her cooperation for financial compensation. During his/her cooperation, the information provided by CS-1 has been corroborated and is believed to be reliable based upon law enforcement actions, drug arrests, recorded telephone conversations, telephone toll analysis, and other related intelligence ascertained throughout the investigation. The information provided by CS-1 has never been found to be false or misleading.

[2] A review of at least one criminal history database reveals that ▮▮▮ pleaded guilty to or was convicted of offenses that include the following: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

based telephone number ███████████ (**subject cellular telephone**) as being used by ██████ to facilitate his drug trafficking activities.

**B.**     **November 20, 2024 – Use of Subject cellular telephone**

10.     On November 20, 2024, DEA SF-37 investigators directed CS-1 to initiate communications with ████████ over the **subject cellular telephone** in order to arrange a purchase of fentanyl. During the morning hours of November 20, 2024, CS-1 and ████████ exchanged a series of text messages arranging the drug transaction later in the day. In light of the coded language, I have set out in parenthesis what investigators believe to be the meaning of the language based upon my training and experience and conversations with CS-1.[3]

    a.  **November 20, 2024 – 9:03 a.m.**
       Outgoing text message from CS-1 to the **subject cellular telephone**

          CS-1:       I (CS-1) know I'm coming by (████████) for sure today (November 20, 2024)!!!

    b.  **November 20, 2024 – 10:37 a.m.**
       Outgoing text message from the **subject cellular telephone** to CS-1

          ████████:       Ok[.]

    c.  **November 20, 2024 – 10:37 a.m.**
       Outgoing text message from CS-1 to the **subject cellular telephone**

          CS-1:       I'll (CS-1) be coming (████████) about 1 (1:00p.m.) [.] Is that ok[?]

    d.  **November 20, 2024 – 10:38 a.m.**
       Outgoing text message from the **subject cellular telephone** to CS-1

          ████████:       Yes just txt (text message) or call (informing CS-1 would be heading ████████) [.]

Through training, experience, the instant investigation, and CS-1's own interpretation, the back-and-forth text messages between CS-1 and ████████ consisted of CS-1 prearranging a drug

---

[3]  The series of text messages to and from the **subject cellular telephone** were later verified through toll analysis of the **subject cellular telephone**, along with TFO Somogye reviewing CS-1's historical text message log and photographed the text messages for preservation.



transaction with ███ on November 20, 2024, around 1:00 p.m. This was further established when CS-1 text messaged, "I (CS-1) know I'm coming by (████████) for sure today (November 20, 2024) !!!" and "I'll (CS-1) be coming (████████) about 1 (1:00p.m.) [.] Is that ok[?]" ██████ responded by directing CS-1 to text and/or call as CS-1 was traveling to ████████.

11.     During the afternoon hours of November 20, 2024, SF-37 investigators established surveillance in the vicinity of "████████████," known ████████████████, along with a location ██████ uses to facilitate his drug trafficking activities.

12.     Simultaneously, TFO Somogye met with CS-1 at an undisclosed location to provide CS-1 $325.00 Official Advanced Funds (OAF) and a covert transmitting/recording device in order to capture audio recording of the drug transaction between ██████ and CS-1. At approximately 1:00 p.m., TFO Somogye directed CS-1 to place an outgoing call to the **subject cellular telephone** to inform ██████ that CS-1 was close to the ████████. In the presence of TFO Somogye and utilizing the speakerphone function of CS-1's cellular device, CS-1 placed the outgoing call. Within seconds, a male answered the incoming call, at which time CS-1 stated, "I'm (CS-1) close." At the conclusion of the call, CS-1 told TFO Somogye that ██████ was the male who answered the telephone call.

13.     Shortly thereafter, CS-1 departed the undisclosed location and traveled directly to ████████████████ located at ████████████, followed by TFO Somogye. As CS-1 arrived, CS-1 pulled to ████████████, with surveillance units observing CS-1 enter the rear door ████████████.

14.     Approximately 15 minutes later, SF-37 surveillance units observed CS-1 exit the rear door ████████████ and depart the area being followed by TFO Somogye. CS-1 and TFO Somogye met at the undisclosed location where CS-1 relinquished the purchased fentanyl, along with the covert transmitting/recording device and debriefed with TFO Somogye.  CS-1 confirmed

8

that ███████ provided CS-1 the fentanyl which was consistent with what was heard on the covert recording device. Based on the training and experience of TFO Somogye and the investigative team the purchased fentanyl did in fact appear to be fentanyl.  The purchased fentanyl was transferred to DEA South Central Laboratory for later analysis and the results are pending.

## CONCLUSION

15.    As indicated above, ███████ is using the **subject cellular telephone** to facilitate his ability to be a source of supply for fentanyl and methamphetamine to the St. Louis Metropolitan area.

16.    Based on the above information, your affiant submits that there is probable cause to believe that the **subject cellular telephone** is currently being used in connection with the commission of the subject offenses by ███████, and others known and unknown.  There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to evidence of the aforementioned subject offenses, the identification of individuals who are engaged in the commission of those criminal offense and related crimes, and would be a valuable asset in achieving the overall goals of the investigation.

17.    None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only.  Furthermore, the criminal conduct being investigated is not limited to the daytime.  Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only.  Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

18.    The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

I state under the penalty of perjury that the foregoing is true and correct.

                                        James Gaddy
                                        Task Force Officer
                                        Drug Enforcement Administration

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on December 2nd , 2024.

SHIRLEY P.  MENSAH
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

10

**ATTACHMENT A**
4:24 MJ 7303 SPM

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) & B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a Warrant and Order requiring a telecommunications service provider reflected in Part II of this Attachment A, to disclose the records and other information concerning the account described in Part I of this Attachment A.

**I.     The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| **T-Mobile** | ██████████ <br> (the subject cellular telephone) | | ████████████ |

**II.    The Provider**

Records and information associated with the subject cellular telephone that is within the possession, custody, or control of **T-Mobile,** and other applicable service providers reflected on the list contained in this Attachment A**,** including information about the location of the subject cellular telephone if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator Telecommunications | Start Wireless |
| Airvoice Wireless | Fibernit Comm | NE Nebraska Telephone | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | Netlink Comm | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Network Services | Talk America |
| Altice USA | Focal Communications | Neustar | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neutral Tandem | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Nex-Tech Wireless | Telepak |
| Arch Communication | Gabriel Comm | Nexus Communications | Telispire PCS |
| AT&T | Galaxy Paging | NII Comm | Telnet Worldwide |
| AT&T Mobility | Global Communications | North Central Telephone | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North State Comm | Time Warner Cable |
| Big River Telephone | Global Naps | Northcoast Communications | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Novacom | Total Call International |
| Blackberry Corporation | Grand River | Ntera | Tracfone Wireless |
| Brivia Communications | Grande Comm | NTS Communications | Trinity International |
| Broadview Networks | Great Plains Telephone | Oklahoma City SMSA | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | ONE Communications | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONSTAR | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | Optel Texas Telecom | US Cellular |
| Call Wave | Huxley Communications | Orion Electronics | US Communications |
| Cbeyond Inc. | iBasis | PacBell | US LEC |
| CCPR Services | IDT Corporation | PacWest Telecom | US Link |
| Cellco Partnership, d/b/a Verizon Wireless | Illinois Valley Cellular | PAETEC Communications | US West Communications |
| Cellular One | Insight Phone | Page Plus Communications | USA Mobility |
| Cellular South | Integra | Page Mart, Inc. | VarTec Telecommunications |
| Centennial Communications | Iowa Wireless | Page Net Paging | Verisign |
| CenturyLink | IQ Telecom | Panhandle Telephone | Verizon Telephone Company |
| Charter Communications | J2 Global Communications | Peerless Network | Verizon Wireless |
| Chickasaw Telephone | Leap Wireless International | Pineland Telephone | Viaero Wireless |
| Choctaw Telephone Company | Level 3 Communications | PhoneTech | Virgin Mobile |
| Cimco Comm | Locus Communications | PhoneTel | Vonage Holdings |
| Cincinnati Bell | Logix Communications | Preferred Telephone | Wabash Telephone |
| Cinergy Communications | Longlines Wireless | Priority Communications | Wave2Wave Communications |
| Clear World Communication | Los Angeles Cellular | Puretalk | Weblink Wireless |
| Com-Cast Cable Comm. | Lunar Wireless | RCN Telecom | Western Wireless |
| Commercial Communications | Madison River Communications | RNK Telecom | Westlink Communications |
| Consolidated Communications | Madison/Macoupin Telephone Company | QWEST Communications | WhatsApp |
| Cox Communications | Mankato Citizens Telephone | Sage Telecom | Windstream Communications |
| Cricket Wireless | Map Mobile Comm | Seren Innovations | Wirefly |
| Custer Telephone Cooperative | Marathon Comm | Shentel | XFinity |
| DBS Communications | Mark Twain Rural | Sigecom LLC | XO Communications |
| Delta Communications | Max-Tel Communications | Sky Tel Paging | Xspedius |
| Detroit Cellular | Metro PCS | Smart Beep Paging | Yakdin Valley Telephone |
| Dobson Cellular | Metro Teleconnect | Smart City Telecom | YMAX Communications |
| | | | Ztel Communications [4] |

[4]  Last Update: 03/17/2019

2

**ATTACHMENT B**
4:24 MJ 7303 SPM

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

I.    **PRECISION LOCATION INFORMATION**

    A.    **Information to be Disclosed by the Provider**

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from ***December 2, 2024 to January 15, 2025***, 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

    B.    **Information to Be Seized by the United States**

All information described above in Part I, Section A that constitutes evidence of violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 involving ███████████.

1

## II.    CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

### Information to be Disclosed by the Provider

1.    All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.    Length of service;

3.    All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")  numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, Media Access Control (MAC),  and primary long-distance carrier;

4.    Subscriber information available for any originating telephone number;

5.    Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

6.      Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7.      Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)      call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)      cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c)      numbers dialed;

(d)      call duration;

(e)      incoming numbers if identified;

(f)      signaling information pertaining to that number;

(g)      a listing of all control channels and their corresponding cell sites;

(h)      subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

(i)    historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call;

(j)    Time Difference of Arrival (TDOA);

(k)    Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone; and,

(l)    Data records to include all data connections between the device and the network via the subject cellular telephone.

## III.    PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.    Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

a. IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c. IP addresses of any websites or other servers to which the subject cellular telephone connected;

d. Source and destination telephone numbers and email addresses;

e. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2. The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including

enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.    The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5.    Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6.    The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.    Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber

or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

AO 93 (Rev. 11/13)   Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Missouri

| | | |
|---|---|---|
| In the Matter of the Search of | ) | Case No. 4:24 MJ 7303 SPM |
| Precision Location Information; Subscriber & | ) | *Signed and Submitted to the Court for* |
| Transactional Records; Cell Site Information; Pen | ) | *filing by reliable electronic means* |
| Register & Trap-and-Trace for Phone ▮▮▮▮▮▮ | ) | **FILED UNDER SEAL** |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of ____New Jersey____

### SEE ATTACHMENT A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT B

**YOU ARE COMMANDED** to execute this warrant on or before ____December 12, 2024____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ✓ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____Shirley P. Mensah____.
*(United States Magistrate Judge)*

❑   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____.

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedures 4.1 and 41

Date and Time issued:   December 2, 2024 at 11:09 _____

_____
*Judge's signature*

City and State:   St. Louis, MO _____

Honorable Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

SUBMITTED AND SIGNED BY RELIABLE ELECTRONIC MEANS

AO 93 (Rev. 11/13) Search and Seizure Warrant (page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>4:24 MJ 7303 SPM | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
4:24 MJ 7303 SPM

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &

B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a

Warrant and Order requiring a telecommunications service provider reflected in Part II of this

Attachment A, to disclose the records and other information concerning the account described in

Part I of this Attachment A.

I.        **The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| **T-Mobile** | ███████ (the subject cellular telephone) | | ███████ |

II.       **The Provider**

Records and information associated with the subject cellular telephone that is within the

possession, custody, or control of **T-Mobile,** and other applicable service providers reflected on

the list contained in this Attachment A**,** including information about the location of the subject

cellular telephone if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [4] |
| | Metro Teleconnect | | |

---

[4] Last Update: 03/17/2019

2

**ATTACHMENT B**
4:24 MJ 7303 SPM

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

**I.     PRECISION LOCATION INFORMATION**

    **A.     Information to be Disclosed by the Provider**

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from ***December 2, 2024 to January 15, 2025***, 11:59 p.m. (CT) during all times of day and night, regarding the location of the subject cellular telephone described in Attachment A.

"Information about the location of the subject cellular telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

    **B.     Information to Be Seized by the United States**

All information described above in Part I, Section A that constitutes evidence of violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 involving ███████████ .

1

**II.    CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA**

For the subject cellular telephone identified in Attachment A, the following telecommunication records and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.    All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.    Length of service;

3.    All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")  numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, Media Access Control (MAC),  and primary long-distance carrier;

4.    Subscriber information available for any originating telephone number;

5.    Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the subject cellular telephone) for the above-specified time period;

6.      Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned subject cellular telephone;

7.      Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)      call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)      cell site activation information, including information identifying the antenna tower receiving transmissions from the subject cellular telephone number, and any information on what portion of that tower is receiving a transmission from the subject cellular telephone number, at the beginning and end of a particular telephone call made to or received by the subject cellular telephone number;

(c)      numbers dialed;

(d)      call duration;

(e)      incoming numbers if identified;

(f)      signaling information pertaining to that number;

(g)      a listing of all control channels and their corresponding cell sites;

(h)      subscriber information, including the names, addresses, credit and billing information, published and non-published for the telephone numbers being dialed from the subject cellular telephone;

(i)       historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call;

(j)       Time Difference of Arrival (TDOA);

(k)       Internet Protocol (IP addresses) utilized by and signaled to and from the subject cellular telephone; and,

(l)       Data records to include all data connections between the device and the network via the subject cellular telephone.

### III.    PEN REGISTERS AND TRAP AND TRACE DEVICES

For the subject cellular telephone identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.       Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the subject cellular telephone number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the subject cellular telephone described in Attachment A., including the date, time, and duration of the communication, and the following, without geographic limit, including:

a.  IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b.  Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c.  IP addresses of any websites or other servers to which the subject cellular telephone connected;

d.  Source and destination telephone numbers and email addresses;

e.  "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.      The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the subject cellular telephone identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers

3.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including

enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5. Should the subject cellular telephone identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the subject cellular telephone listed above is changed throughout the effective period of these Warrants and Orders.

6. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7. Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber

or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the subject cellular telephone.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the subject cellular telephone by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION )   No.  4:24 MJ 7303 SPM
INFORMATION; SUBSCRIBER AND )
TRANSACTIONAL RECORDS; CELL )   **FILED UNDER SEAL**
SITE INFORMATION; AND FOR A PEN )
REGISTER AND TRAP AND TRACE )
DEVICES FOR PHONE NUMBER ██ )
██. )

## MOTION FOR SEALING ORDER

COMES NOW the United States of America, by and through its attorneys, the United States Attorney for the Eastern District of Missouri, and Dane A. Rennier, Assistant United States Attorney for said District, and moves this Court for an order directing that the warrant, along with its application, affidavit, and return, entered by this Court be sealed until June 2, 2025, except for the limited purposes of providing same to defense counsel pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure.

In support of this Motion, the United States provides the following facts, establishing that (a) the United States has a compelling interest in sealing the documents in question which outweighs the public's qualified First Amendment right of access to review those documents; and (b) no less restrictive alternative to sealing is appropriate or practical:

Because this investigation is ongoing and its success would be jeopardized if the contents of the affidavit were made public, and because disclosure of the contents of the affidavit could subject the CS(s) to retaliation and/or physical harm, the United States requests that the affidavit and the accompanying warrant documents be sealed for the stated period of time.

WHEREFORE, for the reasons stated above, the United States respectfully requests that the warrant, along with its application, affidavit, and return, be sealed until June 2, 2025.

Dated this ___2nd___ day of December, 2024.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney


*/s/Dane A. Rennier*
DANE A. RENNIER#67299MO
Assistant United States Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF AN APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT TO OBTAIN LOCATION INFORMATION, INCLUDING PRECISION LOCATION INFORMATION; SUBSCRIBER AND TRANSACTIONAL RECORDS; CELL SITE INFORMATION; AND FOR A PEN REGISTER AND TRAP AND TRACE DEVICES FOR PHONE NUMBER ██ ██ | ) ) ) ) ) ) ) ) ) ) ) ) | No. 4:24 MJ 7303 SPM<br><br>**FILED UNDER SEAL** |

## ORDER FOR SEALING

On motion of the United States of America, IT IS HEREBY ORDERED that the warrant, along with its application, affidavit, and return, and this Order issued thereto, be sealed until June 2, 2025, except for the limited purposes of providing same to defendant counsel pursuant to Rules 12 and 16 of the Federal Rules of Criminal Procedure.

This Order is based upon the sealed motion of the United States establishing that: (a) the United States has a compelling interest in sealing the documents in question which outweighs the public's qualified First Amendment right of access to review those documents; and (b) no less restrictive alternative to sealing is appropriate or practical.

_____
SHIRLEY P. MENSAH
United States Magistrate Judge

Dated this  2nd  day of December, 2024.